## McCurdy v. Township of Upper Merion

C.P. of Montgomery County, no. 95-03242.

*Arthur L. Jenkins Jr.,* for plaintiff.
*Lillian E. Benedict,* for appellant.

SALUS, *J.,* November 16, 1998—These appeals stem from two orders, dated July 31, 1998 and August 4, 1998, in which this court awarded delay damages to Sandra McCurdy, reaffirmed the $130,000 verdict for property damages it entered in favor of plaintiff on April 22, 1998, and denied the post-trial motions filed by the Township of Upper Merion to set aside this verdict. Appellant raises 10 points of appeal in its 1925(b) concise statement of matters complained of on the appeal. These points of appeal, however, emphasize three contentions. First, appellant argues that it is immune from liability in this action because appellant is not the owner of the easement. Notwithstanding its previous actions and assertions of ownership, appellant argues that it is still absolved from liability because governmental immunity is a non-waivable defense. Second, appellant contends that this court erred in not concluding that it was the plaintiff's duty to ascertain the true owner of the easement. Third, appellant argues that this court erred in not finding either the plaintiff or Parmer Scott, a previous owner of

the plaintiff's home, liable on the basis of contributory negligence for some of the damages sustained to plaintiff's property. These points of appeal are addressed below.

## FACTUAL AND PROCEDURAL HISTORY

These appeals arise out of an equity action brought by plaintiff to recover property damages caused by a poorly designed and installed water drainage pipe owned by appellant.

Plaintiff filed a complaint in equity on February 14, 1995, alleging that appellant failed to maintain a storm sewer easement situated on plaintiff's property. Appellant filed its answer on April 18, 1995. In paragraph 7 of its answer, appellant admitted that the fee simple absolute interest of the plaintiff in her real estate "is subject to an easement of a 48-inch reinforced concrete storm sewer which easement is owned and maintained and has been assumed by the Township of Upper Merion." [1]

This court held a bench trial on March 9 and 10, 1998. By its opinion, filed April 27, 1998, this court concluded that appellant was liable to plaintiff for the property damages sustained to her home because appellant took actions after it received notice of the problem which indicated that appellant was the owner of the easement. Therefore, this court also issued a decree on this date which awarded damages to plaintiff in the amount of $130,000.

On May 1, 1998, the plaintiff filed a motion with this court requesting delay damages pursuant to Pa.R.C.P. 238. On May 7, 1998, appellant filed post-trial motions

---

1. See defendant's answer, paragraph 7.

requesting this court to enter judgment in appellant's favor, or alternatively, to reduce judgment or order a new trial.

By its order dated July 31, 1998, this court awarded delay damages to plaintiff in the amount of $28,449.33. This order also granted plaintiff a sum of $33.92 for each day after August 31, 1998 in which appellant failed to pay plaintiff for the delay damages. By its order dated August 4, 1998, this court denied appellant's post-trial motions and reaffirmed its verdict. Finally, on August 11, 1998, plaintiff reduced to judgment the equity and delay damages previously awarded to her by this court through its April 27, 1998 decree and July 31, 1998 order.

This matter is properly before the Commonwealth Court of Pennsylvania because both appeals were filed within the 30-day time frame mandated by R.A.P. 903. The July 31, 1998 order was appealed on September 10, 1998, but is properly before the court because this appeal date was within 30 days of the date on which this order was entered on the docket, August 11, 1998. The August 4, 1998 order was appealed on September 11, 1998, but is properly before the court because this appeal date was within 30 days of the date on which this order was entered on the docket, August 27, 1998.

## DISCUSSION

Appellant is liable to plaintiff for the subsidence sustained to her home because appellant is the owner of the sewer easement which caused this property damage. Appellant argues that this court erred when it precluded appellant from either amending its answer or presenting evidence to show that appellant did not own the sewer easement because such a showing would have absolved

appellant from liability to the plaintiff under the defense of governmental immunity. Appellant contends that this showing could have been made even at the beginning of the trial because governmental immunity is a defense which can never be waived. As discussed *infra,* these arguments are without merit.

The actions taken by appellant both prior to and during the course of this litigation provide firm support to this court's finding that appellant is the owner of the sewer easement. Appellant is estopped from denying ownership of the easement because it took actions prior to this litigation which represented strong indicia of ownership. For example, appellant responded to plaintiff's July 22, 1993 letter first apprising appellant of the damage done to plaintiff's property by contracting with a pipe company to conduct investigations of the area.[2] By letter dated January 14, 1994, appellant informed plaintiff that it did not discern the causes for the settlement of the plaintiff's property, but expressed concern because of the proximity of the pipe to the plaintiff's garage. Consequently, appellant engaged a soil specialist from its consulting engineering firm to further inspect the site. By letter dated March 18, 1994, SMC Environmental Services Group reported to plaintiff that the cracks in the walls of the plaintiff's garage "appear to be the result of long-term settlement of the pipe trench backfill." This letter also suggested to plaintiff that the sewer easement was not the cause of the property damage because it concluded that "the 48-inch pipe was in a good, serviceable condition on the date of inspection." These inspections undertaken by appellant are inconsistent with its later assertion denying ownership of the easement. Further,

---

2. See plaintiff's exhibits P-1 and P-2.

appellant also removed debris from the easement area shortly after plaintiff first complained of the property damage. Thus, this court correctly held that appellant was estopped from denying ownership of the easement because these actions indicated that it maintained at least de facto control over the property in question.

This court also correctly found that appellant was the owner of the easement because appellant made such an admission in its answer to plaintiff's complaint. In paragraph 7 of its answer, appellant admitted that the plaintiff's real property "is subject to an easement of a 48-inch reinforced concrete storm sewer which easement is owned and maintained and has been assumed by the Township of Upper Merion." The Supreme Court of Pennsylvania held that admissions made by a party in its pleadings constitute a judicial admission which cannot be later contradicted by that party. *Tops Apparel Manufacturing Co. Inc. v. Rothman,* 430 Pa. 583, 587, 244 A.2d 436, 438 (1968). A principal element of a judicial admission is that the fact admitted must work to the advantage of the admitting party.[3] *Jewelcor Jewelers & Distributors Inc. v. Corr,* 373 Pa. Super. 536, 542, 542 A.2d 72, 76 (1988). Here, appellant made the admission of ownership to its advantage. As stated previously, appellant ordered inspections of plaintiff's property. These inspections indicated to plaintiff that appellant was the owner of the easement. Thus, appellant admitted owner-

---

3. This rule concerning judicial admissions can be traced to *Willis v. Kane,* 2 Grant 60, 63 (Pa. 1853), in which the Pennsylvania Supreme Court stated:

"Where a man alleges a fact in a court of justice, for his advantage, he shall not be allowed to contradict it afterwards. It is against good morals to permit such double dealing in the administration of justice." *Id.*

ship of the easement in its answer to the plaintiff's complaint because it needed to justify and explain the actions it took in response to the plaintiff's July 22, 1993 letter. By the time of trial in March 1998, however, appellant attempted to deny ownership because such an admission now played to their *dis*advantage. Appellant now sought to avoid liability to the plaintiff under the cloak of governmental immunity through its attempts to deny ownership of the easement at the beginning of trial.[4] However, this court correctly held appellant estopped from denying ownership of the sewer easement because such conduct by appellant consisted of the kind of double dealing against which this rule of evidence was designed to protect. Therefore, appellant may not later assert that it is not the owner of the easement because it is bound by its admission to paragraph 7 of plaintiff's complaint.

Most important, appellant is estopped from denying ownership because appellant's actions prior to and during the course of this litigation induced the plaintiff to conclude that appellant was the owner of the easement. As previously stated, appellant maintained ownership of the easement through both its inspections of the plaintiff's property and its admission to ownership in its answer. These actions created an atmosphere of ownership reasonably relied upon by plaintiff. For this reason, no obligation was imposed upon plaintiff to ascertain whether appellant was the owner of the easement because appellant's actions indicated to plaintiff that there was no need to further pursue this issue. Further, appellant was estopped from denying ownership because it would be unfair to now burden the plaintiff with bringing a cause of action against a different party this late in the pro-

---

4. See N.T., pp. 2-9.

ceedings when appellant's actions sufficiently indicated to both plaintiff and this court that it was the owner of the easement.[5] Notwithstanding that governmental immunity can never be waived, this court correctly found that this defense was not in issue because appellant's actions prior to and during trial precluded it from later denying ownership of the easement.[6]

As the owner of the easement, appellant is liable to plaintiff because it falls within the local agency exception to governmental immunity provided in 8542(b)(5). First, plaintiff showed that the sewer easement presented a dangerous condition to her property. The defective drainage pipe to the sewer easement presented the dangerous condition to her property because it failed to properly contain the flow of water. Moreover, the dangerous condition created a foreseeable risk of the kind of injury which was incurred by plaintiff because plaintiff's causation expert, Dr. Robert Traver, explained that the excess water which flowed outside the drainage pipe was the cause of subsidence and loss of support to plaintiff's

---

5. This court notes that it would also be impossible for plaintiff to bring a cause of action against another party, in light of the three years which had transpired from the filing of the complaint to the time of trial in March 1998. The statute of limitations for causes of action brought to recover damages for injuries to personal property is two years. 42 Pa.C.S. §5524(3). Thus, this court precluded appellant from denying ownership of the easement because it was necessary to preserve plaintiff's cause of action.

6. Appellant argues that this court erred when it awarded plaintiff delay damages pursuant to 238 because it is immune from liability. As stated previously, appellant's clear assertions of ownership preclude it from later asserting that is not liable to plaintiff under governmental immunity. In light of its conclusion that appellant is the owner of the easement, this court finds that appellant is not absolved from liability because it falls within the exception to governmental immunity provided in 42 Pa.C.S. §8542(b)(5).

premises. Second, the local agency also gained actual notice of the dangerous condition within a sufficient time to have taken measures to protect plaintiff against the dangerous condition. Appellant became aware of the property damage to plaintiff's home and land almost two years before the filing of plaintiff's complaint. Appellant, however, failed to correctly diagnose the cause of the problem during these inspections. Consequently, appellant failed to take the measures necessary to prevent further damage to plaintiff's property. For these reasons, this court properly found that appellant is liable to plaintiff for the damages sustained to her property under the local agency exception to the defense of governmental immunity.

This court also correctly concluded that neither Parmer Scott nor the plaintiff were contributorily negligent in this case because appellant was the sole cause of the damages sustained to plaintiff's home. Appellant argues that this court erred when it failed to find that Parmer Scott, the initial owner of plaintiff's property and residence, was liable for part of the damages because he constructed a garage over the sewer easement. Thus, it argues that judgment against appellant should have been reduced to account for the contributory negligence of Mr. Scott because the construction of the garage over part of the sewer easement contributed to plaintiff's property damage. This argument must fail. Mr. Scott requested permission to build a garage when he applied for a building permit on March 10, 1956. Appellant granted this permission to Mr. Scott when it issued a building permit to him on March 20, 1956. That this construction may have contributed to the property damage to plaintiff's home underscores only the negligence of appellant in issuing the permit, not the negligence of Mr. Scott in building the

garage. Further, appellant could have decided against issuing the permit to Mr. Scott because it should have foreseen the potential problems presented to plaintiff's premises by the construction of the garage, given its proximity to the sewer easement. Thus, only appellant can be found liable for any damages which may have been caused by the construction of the garage over the sewer easement because it was appellant who issued a permit to Mr. Scott.[7]

Appellant also argues that this court erred when it provided relief to plaintiff under the doctrine of equitable estoppel because this doctrine was not raised by plaintiff as a basis for relief. In her complaint in equity, the plaintiff asked this court for "all general relief and necessary relief required by the circumstances." This request constitutes a prayer for general relief. See *Lower Frederick Township v. Clemmer,* 518 Pa. 313, 332, 543 A.2d 502, 512 (1988). Under this prayer, a "chancellor in equity may grant any relief that is consistent with the theory and purpose of the action." *Id.* Here, vindicating plaintiff's claim for "all general relief" called for this court to award plaintiff the funds necessary to repair the damage done to her garage and property from the sewer easement. Consequently, after holding a trial to determine the merits of plaintiff's prayer, this court concluded that plaintiff should be awarded $130,000. The doctrine

---

7. Appellant also argues that plaintiff was negligent in neglecting to properly maintain the rainwater gutters and spouts on the residence and the slope of the grading immediately adjacent to the residence. Appellant's argument rests on the expert testimony of Bryan Dillman, which stated that defective water spouting caused the water to run along the plaintiff's foundation and thus contributed to the plaintiff's property damages. See N.T., p. 167. This argument is not persuasive because this court did not find this expert testimony credible, in light of that offered by plaintiff's experts. See N.T., pp. 46, 50-51, 59.

of equitable estoppel, however, did not provide the legal basis for plaintiff's recovery. Rather, the appellant's actions—its tardy and negligent response to plaintiff's complaints and its inadequate attention to matters for which they assumed responsibility—constituted a de facto taking of plaintiff's property requiring just compensation. The appellant's actions and failure to resolve the drainage problem deprived the plaintiff of the proper value of her home and land. David Honig, a structural engineer, established that the value of the house and land was in excess of $130,000 if both were in perfect condition.[8] Thus, this court correctly awarded this sum of property damages to plaintiff under the doctrine of inverse condemnation because such relief is in agreement with the theory of plaintiff's action.

Appellant also contends that this court erred when it granted permission to appellant's expert to inspect the plaintiff's residence only at the conclusion of the first day of trial. Thus, appellant argues that it was prejudiced by this late access to inspect plaintiff's property because such access did not provide appellant's expert with either sufficient lighting or the time and equipment necessary for the expert to prepare an update to his report. This argument is not tenable because appellant failed to make any concerted effort to inspect the property before the first day of trial. Appellant had three years to determine who would serve as its expert and when this expert would inspect plaintiff's property because this case was filed in February 1995. That the lighting was poor and appellant's expert was not prepared are circumstances which were not within either the plaintiff's or this court's control. This court correctly found that appellant—rather

8. See N.T., p. 74.

than the plaintiff—should assume the burden of its inability to secure its expert until shortly before the trial date.

Finally, appellant asserts that plaintiff should not be entitled to relief because she failed to prove her damages with reasonable certainty. Specifically, appellant argues that plaintiff failed to demonstrate the extent of the damage to her residence before appellant received notice of the condition of the sewer easement, for which the appellant could have no liability, and the extent of the damage to her property after receiving this notice. Appellant's attempt to apportion the damages according to when appellant received notice of the condition of the plaintiff's property is rejected by this court. As stated previously, appellant assumed ownership of the easement through both its actions and admissions. Thus, appellant is liable for the damages which occurred to plaintiff's property *before* it received notice from plaintiff because it is the owner of the easement and thus is liable for all damages which stem from the subsidence. Moreover, this court concluded that plaintiff proved her damages with reasonable certainty based on its acceptance of the expert testimony offered by David Honig, a structural engineer, and Christopher Meszaros, a licensed real estate appraiser and broker. This testimony made it clear that the most efficient avenue for repair would be to demolish and rebuild the home. Dr. Honig opined that the estimated cost of this repair was in excess of $130,000. Consequently, this court properly found appellant liable to plaintiff for this sum of money.

## CONCLUSION

For these reasons, the Commonwealth Court of Pennsylvania should affirm this court's orders of July 31, 1998 and August 4, 1998.